# Lee *v.* The State.

### *Prosecution for Unlawfully Presenting Pistol at Another.*

1. *Constitutional law; statutes; act to limit jurisdiction of justices of the peace in Jefferson County.*—The Act, (Acts 1894-5, p. 498), entitled "An act to limit the criminal jurisdiction of justices of the peace, and notaries public with powers of justices of the peace, in precincts 21 and 37, in Jefferson County, and in all wards of the City of Birmingham," is not violative of the section of the Constitution providing that each law shall contain but one subject, which shall be clearly expressed in its title. The word *jurisdiction*, as used therein, is synonymous with "Power," or "Authority."

2. *Same; same; justices of the peace.*—The criminal jurisdiction of justices of the peace is derived from statutory authority, and not from the Constitution. Hence, it is within Legislative competency to limit it, or deprive them of it entirely.

3. *Same; same.*—Although, at the time of the passage of said Act, the "Police Court of Birmingham" was not in existence, still the Legislature having, within thirty days of the passage thereof, created such court, the law is thereby made effective.

4. *Same; same; jurisdiction of Circuit Courts.*—The section of the Constitution of 1875, Sec. 5, Art. VI, conferring on circuit courts, "Original jurisdiction in all matters civil and criminal within the State, not otherwise excepted in this Constitution," does not confer exclusive jurisdiction on such courts in such matters.

5. *Same; same; same.*—Warrants for misdemeanors cannot be issued by a justice of the peace, returnable to a circuit court, to be there tried, as that court has only jurisdiction to try criminal cases after indictment found, or upon appeal from a lower court, after conviction.

6. *Statutes; repeal.*—Repeals by implication are not favored. And
    if, by a fair and reasonable construction of a later and a
    former statute, the two can be reconciled, and each left a field
    of operation, that construction will be adopted. Where the
    intention of the Legislature is not apparent to that purpose,
    the general words of another and later statute shall not re-
    peal the provisions of a former one; the maxim of the law
    being that *generalia specialibus non derogant.*

APPEAL from the Jefferson Criminal Court.

Tried before Hon. D. A. GREENE.

The appellant, R. E. Lee, was charged by warrant
sworn out before a justice of the peace of Beat Thirty-
seven of Jefferson county, with the offense of unlawful-
ly presenting a pistol at another. This warrant was
made returnable before the Criminal Court of Jefferson
County. The defendant filed a plea to the jurisdiction
of the court, setting up that, under the provisions of an
act of the Legislature, (Acts 1894-5, p. 498), the war-
rant was properly made so returnable, and that the court
was without jurisdiction to try the cause. On plea of not
guilty, the defendant was found guilty, and fined.
Therefrom, he appeals.

B. M. ALLEN, for the appellant.

MASSEY WILSON, with whom were H. P. HEFLIN and
J. T. GLOVER, for the State.

TYSON, J.—The ruling of the lower court, in sustain-
ing the demurrer to the defendant's plea, presents for
review the constitutionality of the act entitled "An Act
to limit the criminal jurisdiction of justices of the peace
and notaries public with the powers of justices of the
peace in precincts twenty-one (21) and thirty-seven (37)
in Jefferson county, and in all the wards of the city of
Birmingham," approved February 9th, 1895.—Acts
1894-5 p. 498.

The constitutional objection first urged to the act is
that it violated that provision of the Constitution of
1875, requiring that "Each law shall contain but one
subject, which shall be clearly expressed in its title."

The first section of the act provides that justices of the peace and notaries public with powers of justices of the peace, in the territory named in the title, shall not have or exercise jurisdiction of or over any criminal case or matter whatever, except to take affidavits and to issue warrants thereon returnable to the police court of Birmingham in all cases in which that court has jurisdiction, and to take affidavits and issue warrants and examine all persons charged with offenses of which the police court has not jurisdiction.

The second section provides a penalty for a violation of the first. The third repeals all laws general or special conferring jurisdiction of criminal matters or causes on justices of the peace or notaries public with powers of justices of the peace, other than hereinbefore excepted and an act entitled "An Act to alter and amend the law relating to the territorial jurisdiction and pay of justices of the peace in precincts 21 and 37 in Jefferson county and the several wards of the city of Birmingham and to provide a punishment for the violation thereof," approved December 13, 1894.

The first contention is that the title of the act indicates that its body would deal with and treat of the *jurisdiction* of the justices and notaries public, while in fact the first section deals with the authority or power of those officers. It is argued that the word jurisdiction has a well defined legal meaning when applied to courts; that its meaning is "The power to hear and determine." This is undoubtedly true, but neither the title nor the act under consideration purports or in fact deals with courts, but only with certain judicial officers and their power or authority as such. It is clear, therefore, that the word "Jurisdiction" as used in the title and body of the act is synonymous with "Power" or "Authority." But, aside from this consideration, the section accomplished just what is indicated by the title was expected to be accomplished. It limits the former jurisdiction, possessed by these justices and notaries, to taking affidavits and the issuance of warrants thereon. It is further urged that the third section offends this provision of the Constitution. This might be conceded and yet the first

and second sections of the act would stand. But the third section is perfectly valid. It does not affect, as is supposed, all justices of the peace. Manifestly it only repeals all laws in so far as they affect the jurisdiction of justices and notaries in the territory named in this act.

The next contention is that the act is not uniform, but partial and discriminating, and is an arbitrary interference with the power and authority of these officers. That the act cuts down the authority of those officers and leaves other justices and notaries with powers of justices throughout the State unaffected. If justices of the peace derived their jurisdiction in criminal matters from the Constitution, the contention perhaps would be sound. But as they do not, and their jurisdiction is conferred by statutory enactments, it is entirely within legislative competency to limit it or deprive them of it altogether, and this the legislature may do as to any particular ones or all as it may deem proper. In other words, the extent of their authority or jurisdiction in criminal matters is entirely and absolutely dependent upon the legislative will.

To see that they do not derive their jurisdiction in criminal matters from the Constitution we need only call attention to section 8 of Art. 1 of the Constitution of 1875, and the same section in the present Constitution, and the case of *Danzcy v. State,* 68 Ala. 296. The decision in the case of *Burby v. Howland,* (41 L. R. A. 838) by the New York Court of appeals, relied upon as sustaining the contention was by a divided court. The dissenting opinion by Mr. Justice O'Brien, concurred in by Chief Justice Parker and Justice Haight, is in harmony with our Constitution and the decisions of this Court under it.

The next point made is that, when this act was passed by the legislature, the "Police Court of Birmingham" was not in existence, and it is insisted, therefore, that it is void. Two days after the approval of this act, the act establishing the police court was approved and became a law, while this act did not go into effect until thirty days after the adjournment of the legislature.

[Lee v. The State.]

This, without more, is a sufficient answer to the conten-
tion. The next proposition contended for is that the act
is violative of section 5 of Art. VI. of the Constitution of
1875, conferring upon the circuit courts "Original juris-
diction in all matters civil and criminal within the State
not otherwise excepted in this Constitution." If by this
insistence it is meant that the legislature cannot confer
jurisdiction upon justices of the peace to take affidavits
and issue warrants in misdemeanors, and that circuit
courts can only do so, the argument proves too much.
For clearly the criminal court, in which this case is
pending, would have no jurisdiction of any criminal case,
and the conviction could not stand. But this provision
of the Constitution was not meant to confer *exclusive*
jurisdiction upon the circuit courts of all civil and crim-
inal cases and it does not do so. If it did, the authori-
zation, conferred upon the legislature by that instru-
ment, to establish inferior courts of law for the trial of
cases would be practically valueless. For clearly if these
courts should be established, and the legislature was
powerless to confer on them jurisdiction to try any
causes, they would be useless. There is no constitutional
inhibition against the legislature prescribing the court
to which warrants issued by justices of the peace in mis-
demeanor cases shall be returnable and in which the
cases are to be tried. Under our system they cannot be
made returnable to the circuit court, to be there tried on
the affidavit. That court has only jurisdiction to try
criminal cases after indictment found, or upon appeal
from a lower court after conviction. Nor is the act es-
tablishing the police court obnoxious to this constitu-
tional provision. The legislature had the right to estab-
lish it and to confer upon it the exclusive jurisdiction to
try criminal cases on affidavit within a prescribed ter-
ritory, if it saw proper. Nor is the act limiting the
jurisdiction of justices repealed by that provision of
the act of December 7th, 1900, (Acts 1900-1 p. 22),
amendatory of the act establishing the criminal court
of Jefferson county, which reads as follows: "That the
criminal court of Jefferson county shall have and exer-

7s

cise jurisdiction, concurrently *with other courts* now having the same, of all prosecutions for misdemeanors committed in said county." Repeals by implication are not favored. And if, by a fair and reasonable construction of a later and former statute, the two can be reconciled and each left to operate, that construction will be adopted. Indeed, a repeal will not be decreed unless the repugnance between the two is not only irreconcilable but also clear and convincing. "Where the intention of the legislature is not apparent to that purpose, the general words of another and later statute shall not repeal the particular provisions of a former one; the maxim of the law being, *generalia specialibus non derogant.*" *City Council of Montgomery v. National Building & Loan Association*, 108 Ala. 343.

The demurrer to the plea should have been overruled.

Reversed and remanded.

McCLELLAN, C. J., SIMPSON and ANDERSON, J.J., concurring.